19658

In the Matter of H. V. SANDIFER, Respondent
(198 S. E. (2d) 120)

*Messrs. Daniel R. McLeod, Atty. Gen., John P. Wilson* and *Walter Davies Merry, III, Asst. Attys. Gen.,* of Columbia, *for Complainant.*

*Thomas Kemmerlin, Jr., Esq.,* of Columbia, *for Respondent.*

July 11, 1973.

*Per Curiam:*

This disciplinary proceeding is before us on a rule requiring the respondent, H. V. Sandifer, a duly licensed attorney of Lexington, South Carolina, to show cause why a report of the Board of Commissioners on Grievances and Discipline, finding him guilty of misconduct as an attorney, should not be confirmed and an appropriate disciplinary order issued.

On March 11, 1972, the respondent was served with a complaint alleging that he was guilty of having advanced great sums of money "by way of maintenance" to a client in a personal injury action, one Silas I. Roland, and with having failed to maintain a separate trust account for monies belonging to his said client. It was alleged that such acts tended to pollute the administration of justice and to bring the courts and the legal profession into disrepute.

Upon a hearing before a three man panel, appointed pursuant to Rule 9 on Disciplinary Procedure, the charge of having failed to maintain a trust account seems not to have been established. It developed, however, that Roland, the prosecuting witness, was contending that respondent had not properly accounted for funds, which additional charge was heard by the panel without objection by the respondent.

The hearing panel did not find the respondent guilty of maintenance and found that he had not appropriated any of the complainant's funds to his own use. It did find that respondent had not made a proper accounting to the complainant and that he had made advances to his client, for whom he was handling litigation, which both parties agreed were intended as loans. The panel found that these acts tended to pollute the administration of justice and to bring the legal profession into disrepute, and recommended that the respondent be publicly reprimanded.

The report of the full Board following review of the panel report shows that it "voted unanimously in favor of

a finding of improper conduct and voted 10 to 2 in favor of a public reprimand." The Board report did not expressly confirm the panel report nor contain any specific findings of fact.

The record reflects the following facts. At some time prior to December, 1968, Silas I. Roland was injured in a train accident in Washington, D. C., and in December was confined to the Baptist Hospital in Columbia. An uncle of Roland was a client of the respondent and at the relayed request of Roland and the insistence of the uncle, respondent went with the uncle to see Roland in the hospital. At the time, Mrs. Roland was also disabled. The Rolands had small children to support and Roland, according to his own testimony, was desperately in need of both money and a lawyer to represent him. There is uncontradicted evidence of the following facts. Upon this first visit to the hospital, the respondent was reluctant to and did decline to accept the representation of Roland; instead he advised Roland that he should consult a Columbia attorney who had previously represented him in another matter, to which advice, however, Roland demurred. A few days later, Roland called respondent again following which respondent did accept representation, taking from Roland a contingent fee contract on December 17, 1968. On the same date, the Rolands being then in desperate need, he loaned Roland $150.00, taking his promissory note therefor.

The evidence is in some conflict as to what was said between the parties with respect to the loan of money to Roland, but the respondent continued to lend Roland money and/or arrange loans for him at the Lexington State Bank by co-signing notes with him. By June 6, 1969, Roland had borrowed approximately one thousand dollars. On that date he acquired from his father-in-law a deed to seven acres of land adjacent to Lake Murray, which was either a gift or in part a gift. Simultaneously, Roland mortgaged said land to the Lexington State Bank for $3,230.00. Thereafter, re-

spondent from time to time loaned or advanced other funds to Roland, and, in the course of three conveyances, acquired title to the seven acres of land. Thereafter, all of Roland's various debts and notes to the bank were consolidated with the respondent giving the bank a mortgage on the land acquired from Roland as security for the consolidated indebtedness in the total amount of $7,291.58. It is conceded that the conveyances from Roland to respondent were intended as security although there is some conflict in the evidence as to precisely which loans or advances they were intended to be security for.

From the documentary evidence, as well as the testimony, it seems reasonably clear that the sum of $1,600.00 was loaned strictly upon the security of the real estate, which amount was repaid with interest, upon reconveyance of the realty, shortly after Roland's case was settled, this item being not at all involved in the memorandum of the settlement of the case hereinafter referred to. Additionally, the real estate was also intended as security to some extent for at least some of the other loans made by the respondent to Roland. The evidence is susceptible of more than one reasonable inference as to the value of the real estate but the clear weight of the evidence, we think is to the effect that such was not sufficiently valuable to be deemed adequate collateral for all of the money owed to both the bank and respondent by Roland.

Roland's suit for damages appears to have been actually handled by a Washington attorney, Mr. Mendleson, associated by respondent. A settlement of the case for the sum of $16,000.00 was agreed upon in late December, 1970, but the actual settlement draft was not received in Lexington until January 25, 1971. On that date respondent furnished Roland a one page handwritten memorandum of the distribution of the settlement, accompanied, however, by photocopies of the various checks and notes showing monies borrowed by Roland. Such appears to be the only accounting

ever furnished to Roland and is the one found by the panel to be not a proper one. We agree.

This memorandum showed that after the payment of attorney's fees of one-third of the gross recovery and the expenses of litigation, there remained the sum of $10,492.80. Of this, $7,463.30 was admittedly owed to the Lexington State Bank, leaving for further distribution only $3,029.50. Such sum was applied on the settlement memorandum to "notes from Roland to Sandifer, for food and clothes, living essentials, total $4,544.47", leaving Roland still owing respondent the sum of $1,514.97.

The respondent filed with the panel an accounting which, if we understand it correctly, shows that he made a $500.00 error in the settlement memorandum of January 25th, thus emphasizing the inadequacy of his accounting. Inadvertently included in the total shown as due respondent by Roland was a $500.00 note which had been incorporated by successive steps into the indebtedness to the bank and which was, of course, no longer due to the respondent, leaving the amount actually due him $4,044.47, with a balance after the settlement of $1,014.97.

It appears that after the settlement of January 25th, respondent paid on behalf of Roland medical bills in the amount of $803.00, not included in the settlement memorandum, thus indicating a present indebtedness by Roland to respondent in the amount of $1,817.97. Respondent received from the settlement proceeds one half of the attorneys' fee of $2,666.66, and subtracting therefrom the indebtedness remaining from Roland results in him receiving, in effect, a fee of $848.69.

Following Roland's injuries and hospitalization, he admittedly became addicted to drugs and engaged in excessive drinking. Understandably, his condition rendered him a difficult client to deal with. The evidence is in sharp conflict as to what transpired when the settlement of Roland's case was agreed upon, he testifying that he was given to

understand that he would have some money coming to him out of the settlement. To the contrary, respondent testified that he had told Roland that the agreed settlement would leave him in debt with nothing coming to him. He does not contend, however, that Roland was then advised precisely where the settlement would leave Roland financially.

The members of this Court are in agreement with the findings of the panel to the effect that the extensive and involved loan transactions of the respondent with his client coupled with his failure to give a complete and intelligible statement of account to his client at the time of settlement tended to pollute the administration of justice and to bring the legal profession into disrepute. The question then becomes, just what, under all of the circumstances reflected by the record, is a proper disposition of the matter by this Court? The panel report commented on the fact that the first loan in the amount of $150.00 was made the same day the contract was signed. Such fact, standing alone, might well give rise to an inference of solicitation by the respondent, but no such finding was made by either the panel or the Board, and the weight of the evidence is rather clearly to the effect, we think, that there was in fact no solicitation on the part of the respondent.

While initially humane consideration for the desperate needs of Roland and his wife, rather than any selfish end of the respondent, appears to have led to the loans, the end result was a situation where obviously the attorney had, even by his own testimony, lost control of the litigation. When faced with this situation, it was more incumbent than ever upon the respondent to furnish the client a detailed and intelligible statement showing precisely where the client stood financially and precisely what, if anything, he might receive from the proposed settlement. Had such a comprehensive statement been rendered, it is at least possible that this proceeding would never have been instituted.

There is an annotation contained in 8 A. L. R. (3rd), commencing at page 1157, dealing with the advancement by attorneys of clients' expenses. It appears from this annotation (Sec. 7, page 1177) that there are relatively few cases in which disciplinary proceedings have been prosecuted against attorneys because of loans to clients, and that in most, if not all, cases where such loans have been made a basis of disciplinary action they have been only one factor accompanied by other misconduct, such as improper solicitation of legal business. The only additional misconduct here is the failure to give a comprehensive and intelligible statement. We have held that the punishment adjudged should be commensurate with the offense or offenses committed. *Cate v. Rivers,* 246 S. C. 35, 142 S. E. (2d) 369; *In Re Kennedy,* 254 S. C. 463, 176 S. E. (2d) 125.

The respondent argues that his punishment should be limited to a private reprimand and that such would be adequate since he has already endured considerable punishment through financial loss, harassment by his client and the embarrassment of this proceeding to himself and his family. A majority of the members of this Court, however, is of the view that his conduct requires and justifies the punishment of public reprimand as recommended by the panel and a majority of the Board.

Having found H. V. Sandifer guilty of the professional misconduct before mentioned, he stands publicly reprimanded by this Court in accordance with Sec. 5(c) of the Rule on Disciplinary Procedure.

Let this order be published with the opinions of the Court.