21868

In the Matter of David Ross CLARKE, Respondent.
(300 S. E. (2d) 595)

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod,* and *Asst. Atty. Gen. John M. Cox,* Columbia, *for complainant.*

*David Ross Clarke,* Mauldin, *pro se.*

February 23, 1983.

*Per Curiam:*

This attorney grievance proceeding is before us as a result of a report of the Board of Commissioners on Grievances and Discipline. The Hearing Panel and the Executive Committee have recommended that the Complaint against the Respondent, David Ross Clarke, be dismissed. It is well established that the final disposition of all such cases is for determination of this Court. *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d) 300 (1967). We affirm in part and reverse in part.

The Complaint alleged that the Respondent was guilty of misconduct in two particulars in connection with his repre-

sentation of Complainant's minor son in an unsuccessful tort action tried by a jury. Respondent represented the plaintiff in the action entitled Cornelius O. Anderson, by Guardian, Clotell Anderson, v. Sidney Brady. The gravamen of the tort action was the contention of the plaintiff that assault and battery had been committed upon him, a student, by the defendant incident to a "spanking" administered at a public school.

There are two basic contentions of the Complainant. FIRST, it is charged that the Respondent neglected a legal matter entrusted to him by failing to timely perfect an appeal from the Order of the trial judge denying Motion for Judgment Notwithstanding the Verdict in the tort trial. SECONDLY, it is charged that the Respondent attempted to exonerate himself or limit his liability by demanding that Complainant sign a release as a condition for delivering the file in order that another attorney might pursue an appeal.

Representation in the tort action case was taken by the Respondent on a contingency basis. He and the Complainant, Clotell Anderson, discussed the matter of appeal and it is not contested but that the payment of a fee was a prerequisite to proceeding with an appeal to the Supreme Court. No fee was paid and the Complainant admits that she did not intend for the Respondent to perfect the appeal because she was dissatisfied and wanted another attorney to undertake the chore. While there is evidence which, if believed, might make the Respondent culpable in failing to give timely notice of intent to appeal to the Supreme Court, the evidence is such that we cannot say that the Hearing Panel and the Executive Committee erred in finding that Respondent neglected no duty in failing to file an intent to appeal. Accordingly, we accept the Board's recommendation on the first accusation.

After the unsuccessful trial of the case, Respondent was aware of the fact that the Guardian was talking with another attorney relative to employment for the purpose of an appeal and was, of course, obviously aware of the fact that she wished to proceed with the appeal. He filed a Notice of Intent to Appeal with the county clerk of court but did not serve his adversary or file notice in the Supreme Court as required to preserve the right to review. He was at that

time attorney of record and had not been released in keeping with Rule 7 of the Circuit Court which provides as follows:

*Change of attorney* — An attorney may be changed by consent or upon cause shown, and upon such terms as shall be just, upon the application of the client, by order of the Circuit Judge, and not otherwise.

The last day for filing Notice of Intent to Appeal in the Supreme Court was July 8, 1981. It was the testimony of the Respondent that the Guardian failed to keep an appointment with him in his office on July 6th. It was further his testimony that he was prepared to go forward with the appeal himself or to deliver the file to Guardian for consideration by a new attorney. Respondent had a receipt (which will be quoted hereafter) prepared for her to sign. It was the Guardian's testimony that she had no appointment on July 6th and it is her contention that Respondent should have filed the notice so as to protect her rights.

On July 16th, the Guardian appeared in the office of the Respondent and was presented with a document which reads as follows:

I, Clotell Anderson, hereby release David Ross Clarke, attorney, from representation of me in connection with the suit of Clotell Anderson, as General Guardian for Cornelius O. Anderson, a minor child twelve (12) years of age, v. Sidney Brady. I hereby state that I have been completely satisfied with the said David Ross Clarke's representation of me in said suit, and agree to hold him harmless, forever, in connection with any past, present or future developments concerning this matter. I also further state that I am well aware that the David Ross Clarke has filed, with the Clerk of Court for Abbeville County, a Notice of Intention of Appeal, and that if I desire to perfect such Appeal I must have same in the mail to the Clerk of the Supreme Court for South Carolina and opposing counsel no later than July 8th, 1981, and that I also have the responsibility of ordering the transcript of said matter. I had an appointment with David Ross Clarke to receive my file from him on July 6, 1981, and to release him as my attorney; that I had advised Mr. Clarke that I had made arrangements for

other representation. Further, I did not keep my appointment with the said David Ross Clarke on July 6, 1981.*

---

### Clotell Anderson

The Guardian refused to sign the document and mailed it on July 17th to the Supreme Court instead along with her *pro se* Notice of Intent to Appeal. No file has been delivered to her or to her new attorney until this date. Her effort to appeal the case *pro se* was dismissed by this Court because it was untimely.

Rule 32 of the Supreme Court is in essence the Code of Professional Responsibility, as approved by the American Bar Association. A violation of the Code of Professional Responsibility is misconduct warranting the sanction of this Court. DR6-102 provides as follows:

A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

EC6-6 provides as follows:

A lawyer should not seek by contract or other means, to limit his individual liability to his client for his malpractice. A lawyer who handles the affairs of his client properly has no need to attempt to limit his liability for his professional activities and one who does not handle the affairs of his client properly should not be permitted to do so.

It is inescapable that the purpose of the receipt and release submitted, but refused, was to exonerate the Respondent from liability for anything he may have done or neglected to do for his client. On cross-examination, he stated: "And I think that I was entitled to that portion of the release, and I think that I was entitled to that type of protection there." He further testified:

Q. And that is, indeed, the practice of your law firm, as Ms. Lamm testified, that clients getting their files are asked to sign what Ms. Lamm testified was the standard part of the release? Agree to hold you harmless,

past, present, or future in connection with the matter?
That was the matter you were handling for the client?

A. Sir, I think the document speaks for itself.

The Guardian refused to sign the release. It included statements which she asserts were untrue. The Respondent was justified in demanding a simple receipt for the file but he was not permitted to demand a release from a possible malpractice action nor was he entitled to demand a factual statement which might be helpful to him later and detrimental to the Ward and/or the Guardian. We are of the opinion that the matter is aggravated by the fact that the release he was seeking might be prejudicial to a minor. In the last analysis, the ten year-old child was the litigant and although the Guardian had the right to control the tort action, the Guardian had no right to sign a release of any claim the Ward might have for malpractice in a separate action.

Respondent attempts to justify his failure to turn over the file by stating, in essence, that there was no file to be turned over. He argues that all a new lawyer needed for the appeal was a matter of record filed in the office of the county clerk of court. The contention is incredible.

Respondent would excuse his demand for exoneration from liability by contending that his secretary drew up the release and that he was not aware of its contents. She had worked in other law offices and submitted that she learned to draw such instruments while employed by others. Their explanation does not reek of verity in the light of Respondent's testimony quoted above and in the light of the secretary's testimony, which is as follows:

Q. Well, let me ask you about this particular phrase, and let's just look here where we can read it together, and you tell me if this is part of your standard release or not: And agreed to hold him harmless forever in connection with any past, present, or future developments concerning this matter?

A. Yes, sir.

Q. That's part of a standard release?

A. Yes, sir.

Q. And do you do this as a matter of course for Mr. Clarke? Do you give clients this standard release as a matter of course for Mr. Clarke?

A. Yes, sir, but you realize there are not that many people coming in and asking for their files.

Q. Yes, ma'am, I realize that. But those that do, they sign this; is that correct?

A. Yes, sir.

The Panel Report, which the Executive Committee adopted, disposed of the exoneration issue, with which we disagree, as follows:

> It was admitted that Respondent's secretary, following expiration of time for appeal, tendered to Clotell Anderson, Guardian Ad Litem for the Plaintiff, a form of receipt for the file and a release. There is a conflict in the testimony whether this was presented to Clotell Anderson for signature or simply for her consideration. The Panel is persuaded from the circumstances surrounding the tendering of the receipt and release that it was not such as to constitute an attempt to exonerate the attorney but was simply an effort to obtain a receipt for the file in a more or less routine manner.

We are of the opinion that the receipt was not ". . . simply an effort to obtain a receipt for the file in a more or less routine manner." The fact remains that she was denied the file because she refused to sign not a simple receipt but an exoneration agreement which she as Guardian had no authority to sign, plus statements of fact contested. If a malpractice claim existed, it was the property of the Ward to be pursued in a separate lawsuit and the signing of the paper submitted could have only lulled the Guardian, who is the mother of the child, into believing that no cause of action could be pursued.

We hold and find that the Respondent had been guilty of misconduct tending to bring the courts and the legal profession into disrepute and the appropriate sanction is a public reprimand.

The Respondent, David Ross Clarke, therefore, stands publicly reprimanded at the Bar.

GREGORY, J., concurs and dissents.

HARWELL, J., dissents.

GREGORY, Justice (concurring in part; dissenting in part):

I am in accord with the finding of misconduct but disagree with the sanction of public reprimand imposed by the majority opinion. In my view a private reprimand is the appropriate sanction.

HARWELL, Justice (dissenting):

I do not deem it necessary to go into a detailed analysis of the facts in this case. Suffice it to say that after a full hearing and observing the witnesses the panel found no unethical conduct on the part of the respondent. This panel's report was concurred in by a 5-0 vote of the Executive Committee. These findings are amply supported by the record in the matter, and I do not wish to substitute my judgment for theirs. I would accept their recommendations and would dismiss the complaint and impose no sanctions.