**In re Anonymous No. 71 D.B. 88**

Disciplinary Board Docket no. 71 D.B. 88.

Opinion of the Disciplinary Board of the Supreme Court of Pennsylvania:

TUMOLO, *Chairman,* August 15, 1990 — Respondent, born in 1953, was admitted to the practice of law in the Commonwealth of Pennsylvania in 1978. Respondent's office is located at [    ].

By Form D.B. 7 letter dated February 13, 1987, respondent was advised of the complaint filed against him. By letter of response, respondent admitted a violation of D.R. 6-102(A). On March 9, 1988 respondent was administered an informal admonition for violation of D.R. 6-102(A) and D.R.

9-102(B)(4). Respondent made a request to vacate the informal admonition and institute formal charges.

On July 6, 1988, Office of Disciplinary Counsel filed a two-charge petition for discipline against respondent. In charge one, respondent was accused of attempting to exonerate himself from or limit his liability to his client for his personal malpractice. In charge two, it was alleged that respondent failed to promptly return to his client property which his client was entitled to receive. On August 3, 1988, respondent filed an answer to the petition for discipline and request to be heard in mitigation. On August 4, 1988, the matter was referred to Hearing Committee [ ].

By order dated November 14, 1988, the Disciplinary Board granted Office of Disciplinary Counsel's request for a continuance of the hearing. On November 28, 1988, Office of Disciplinary Counsel filed a petition for leave to withdraw charge II of the petition for discipline and/or motion to dismiss charge II which was granted by the Disciplinary Board on December 9, 1988. Due to the dismissal of charge II, respondent, through counsel, requested the matter be resubmitted to a reviewing hearing committee member for an independent determination concerning the remaining charge of violation of D.R. 6-102(A). Respondent was scheduled to appear for an informal admonition on November 30, 1989. However, by letter dated November 21, 1989, respondent reiterated his request for a formal hearing.

On January 1, 1980, the matter was reassigned to Hearing Committee [ ] consisting of [ ]. A hearing was held on February 28, 1990. The hearing committee filed its report on June 5, 1990, in which

the committee recommended the matter be dismissed. Neither petitioner nor respondent filed exceptions to the hearing committee report. Thereafter, the matter was adjudicated by the Disciplinary Board at its regularly scheduled meeting on June 22, 1990.

## FINDINGS OF FACT

In 1982, respondent was retained to represent [A] and her sons in various legal matters. Respondent competently represented [A] until she discharged respondent as counsel in 1986. At the time respondent was discharged, [A] did not have a telephone. Respondent telephoned [B] in an effort to advise [A] about certain legal matters. During this telephone call to [B], respondent was advised that [A] informed them that respondent was no longer her attorney and they were not permitted to release any information.

By letter dated October 23, 1986, sent to [A], respondent sought to settle all matters concerning the status of their attorney-client relationship and to obtain a receipt for the release of [A's] documents. In the letter, respondent requested [A] to turn over to him a check in the amount of $2,000 which respondent had in his possession. Respondent advised [A] that he would accept the $2,000 check in full payment of the outstanding amount of $10,944 [A] owed to respondent for legal fees. Respondent also informed [A] that before he could turn over all the documents pertaining to her numerous cases, [A] must sign the enclosed release form. The release, which respondent had copied from a form used by a law firm in [ ] County, included the following statement: "I ([A]) am satisfied with the work that [respondent], Esq., has performed on all

cases in my file, and do hereby release him from any and all liability which may exist from any work which he had done on my behalf." [A] did not execute the release form and did not endorse to respondent the $2,000 check.

On October 23, 1986, at about 9:15 p.m., respondent went to [A's] home with all of her files, intending to return to [A] all of her documents. It was not unusual for respondent to meet with [A] at her home in the evening. Respondent often accommodated [A] by meeting with her at such times on prior occasions. On the evening of October 23, 1986, [A] refused to admit respondent to her home. [A] told respondent to leave, threatened to call the police, and told respondent to come back during "normal business hours." Respondent appeared at [A's] home on October 24, 1986 at about 9:30 a.m. However, [A] again refused to accept her files which respondent attempted to return to her. Respondent then left a copy of the release form in [A's] screen door, left the premises, and never returned to [A's] home.

Respondent made numerous attempts to return to [A] both her file and the $2,000 check. Respondent in no way held up the $2,000 check as an inducement to coerce [A] to sign the release. Respondent's initial attempts at returning the file and check to [A] were unsuccessful because [A] refused to accept any mail from respondent. In fact, [A] accused respondent of harassing her through the mail. Eventually, respondent returned to [A] her file through an intermediary. Respondent also had his attorney turn over the $2,000 check to Disciplinary Counsel who returned it to [A]. Respondent never received any payment for legal fees [A] owed in the amount of $10,944.

Although respondent believed he handled all of [A's] matters competently, respondent prepared a release form to be executed by his client. [A] did not discuss, threaten or indicate she had any intention of filing a legal malpractice claim against respondent prior to the time respondent prepared the release. Respondent prepared the release form in fear that his client would attempt to harm him in some way. [A] had a reputation for filing unfounded claims against lawyers, judges and district magistrates. Respondent simply assumed he was next. Respondent's fears proved to be justified. In addition to the charges brought against respondent in the petition for discipline, [A] made the following accusations: Respondent had forged her son's name on a $30,000 settlement check, unilaterally increased the contingent fee from 33 percent to 50 percent and improperly retained the difference, failed to remit the proceeds of a $2,000 settlement, and defrauded her son of $500 in regard to a separate matter. Although Office of Disciplinary Counsel did not charge respondent with misconduct in regard to the above complaints, respondent was still forced to respond to these allegations, causing him to expend considerable amounts of time and money. [A] also filed two pro se malpractice actions against respondent in [   ] County. No other malpractice claims have ever been filed against respondent and respondent has no record of disciplinary action prior or subsequent to [A's] complaints.

## CONCLUSIONS OF LAW

Respondent's conduct has constituted a violation of the following Disciplinary Rule of the Code of Professional Responsibility: D.R. 6-102(A), which

prohibits an attorney from attempting to exonerate himself from or limit his liability to his client for his personal malpractice.

## DISCUSSION

The matter before the board presents no factual dispute. Respondent admits violating D.R. 6-102(A), which prohibits an attorney from attempting to exonerate himself from or limit his liability to his client for his personal malpractice. In reviewing this matter de novo the sole issue before the board is the appropriate measure of discipline to be imposed on respondent, if any. The hearing committee has recommended dismissal of the matter to which neither Disciplinary Counsel nor respondent have taken exception.

The purpose of this disciplinary proceeding is to determine whether respondent's conduct make him unfit to practice law from the standpoint of protecting the public and the courts. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986); *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1982).

Despite the dearth of cases, various jurisdictions have imposed discipline for conduct which involved attempting to limit liability for personal malpractice in violation of D.R. 6-102(A). Some reported disciplinary cases involve attorneys who attempt to obtain releases from their clients under false pretenses after the malpractice has occurred. In one case, the attorney typed a restrictive endorsement on the back of the check issued to his client which would have limited his malpractice liability to the amount of the repaid fee. The attorney was sus-

pended as a result of his conduct which included commingling of funds. *People v. Good,* 195 Colo. 177, 576 P.2d 1020 (1978). In another matter, the attorney failed to timely file an action on behalf of his clients. The attorney then falsely informed his clients that he was negotiating a settlement with the defendant's insurance company when, in fact, the attorney obtained the settlement from his own malpractice insurer. A suspension was imposed. *In re Craven,* 271 Ind. 67, 390 N.E.2d 163 (1979).

In other cases, discipline was imposed on attorneys who attempted to obtain releases from their clients through coercive means. In one such case, the attorney failed to timely perfect an appeal from the order of the trial judge denying motion for judgment notwithstanding the verdict. Therefore, the attorney withheld his client's file from subsequent counsel demanding the client to first sign the release. The sanction of public reprimand was imposed. *In re Clarke,* 300 S.E.2d 595 (S.C. 1983).

In the matter of *In re Preston,* 111 Ariz. 102, 523 P.2d 1303 (1974), the attorney was approached by his client who expressed his dissatisfaction with the attorney's representation and requested the return of his file to take to another lawyer. The attorney refused to return the file unless the client signed a release. The sanction of public censure was imposed.

There are some cases in which an attorney was disciplined for attempting to settle an existing malpractice claim despite the fact the attorney did not engage in deception or coercion. In the case *Florida Bar v. Nemec,* 390 So.2d 1190 (Fla. 1980), the attorney overlooked the statute of limitations, explained his neglect to his clients, and offered the

clients $10,000 in settlement of the matter. The clients agreed to the settlement conditioned on the fact the attorney pay all medical bills. The attorney then attempted to settle the medical bills for less than the amount owed. A public reprimand was imposed due to the attorney's failure to advise his clients to seek the advice of another attorney. In the matter *In re Tallon,* 447 N.Y.S. 2d 51, 86 A.D. 2d 897 (1982), the attorney allowed the statute of limitations to expire on the claims of his client. Thereafter, the attorney had his client execute a general release of all claims of malpractice without first advising the client of the existence and nature of such claims and of the client's right to consult with another attorney. Due to the fact the attorney had a substantial prior disciplinary history, a six-month suspension was imposed. The board believes respondent's conduct in the matter can be distinguished from the above-cited cases in which discipline was imposed.

As indicated above, when an attorney is forced or threatened with a charge of malpractice, any action taken by the attorney on his own behalf to limit liability will pose ethical problems due to the potentially conflicting interest of the attorney and the complaining client. Disciplinary Rule 6-102(A) was implemented to preserve the attorney-client relationship and protect the client's interest in any type of action against the attorney for malpractice. Respondent's conduct did not cause or threaten the harm sought to be prevented by the statute. As dictated by the Pennsylvania Supreme Court, the board has adjudicated this matter on its own unique facts and circumstances. See *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). In this matter, respondent was informed by a

third party that his client, [A], discharged him as her attorney. Knowing the peculiarities of his client, respondent prepared a release form which he copied from a form used by a law firm in [ ] County. At the time respondent prepared the release form to be executed by his client, there was no threat or any indication [A] intended to file a legal malpractice claim against respondent. In fact, [A] did not even express any dissatisfaction with respondent's representation. Although respondent believed he handled all of [A's] matters competently, respondent prepared the release out of fear that his client would attempt to harm him. [A] had a reputation for filing unfounded claims against lawyers, judges and district magistrates. Respondent's fears proved to be justified. In her original complaint filed with the Office of Disciplinary Counsel, [A] made numerous accusations against respondent including forgery and conversion of funds. These allegations were proven to be unsubstantiated by the evidence and Office of Disciplinary Counsel chose not to charge respondent with misconduct in regard to these matters. [A] also filed two pro se malpractice actions against respondent in [ ] County. No other malpractice claims have ever been filed against respondent and respondent has no record of disciplinary action prior or subsequent to [A's] complaints.

In addition, respondent did not engage in any type of deception or coercion. At the time respondent prepared the release, respondent had in his possession a $2,000 check payable to [A]. Initially, respondent advised [A] that he would accept the $2,000 check in full payment of the outstanding amount of $10,944 [A] owed to respondent for legal fees. After [A] declined to execute the release form, respondent did not withhold the $2,000 check or [A's] files as an

inducement to coerce [A] to sign the release. In fact, respondent made a great effort to return to [A] the $2,000 check and the files, but she refused to speak to or accept any mail from respondent. Eventually respondent returned to [A] her file and the check through an intermediary. Respondent never received any payment for legal fees [A] owed in the amount of $10,944. [A] did not suffer any harm as a result of respondent's conduct.

In conclusion, the board finds that the conduct of respondent in this case did not in any way defeat the primary purpose of the disciplinary system, namely, protecting the public from an unfit attorney.

## DETERMINATION

Based upon the finding that respondent's violation of D.R. 6-102(A) is de minimis the Disciplinary Board has determined that the complaint against the respondent should be and hereby is dismissed.

Ms. Heh did not participate in the adjudication.

The board's adjudication and this opinion resulted from the efforts of the Honorable D. Michael Stine during his tenure with the board.

## ORDER

And now, August 15, 1990, upon consideration of the report and recommendation of Hearing Committee [   ] filed June 5, 1990; it is hereby ordered that the charges against [respondent] docketed at no. 71 D.B. 88 be dismissed.