18438

M. N. CATE, Complainant, v. D. N. RIVERS, Respondent
(142 S. E. (2d) 369)

*Messrs. Daniel R. McLeod, Attorney General,* and *Grady L. Patterson, Jr.,* and *Julian L. Johnson, Assistant Attorneys General,* of Columbia, *for Complainant,*

*Claude N. Sapp, Jr., Esq.,* of Columbia, *for Respondent.*

May 14, 1965.

*Per Curiam:*

This matter is before the Court as the result of a report of the Board of Commissioners on Grievances and Discipline recommending disciplinary action against the respondent, a member of the South Carolina Bar, upon findings that he had been guilty of misconduct as defined by Section 4 of the Rule on Disciplinary Procedure for Attorneys, in that his conduct in the matters under inquiry had tended to pollute and obstruct the administration of justice, reflected adversely on the legal profession of this State, constituted a crime of moral terpitude, and violated the Canons of Professional Ethics (Sections 29 and 32 of Rule 33 of the Rules of the South Carolina Supreme Court).

The action of the Board followed the filing of a complaint against the respondent relative to his actions and conduct in handling twelve adoption proceedings in the Court of Common Pleas for Jasper County, South Carolina. The specific charges of professional misconduct against the respondent were:

(1) That he forged the name of the Honorable John Grimball, Presiding Judge of the Fourteenth Judicial Circuit, to the decrees in twelve adoption cases;

(2) That he forged the signature of Randolph Murdaugh, Esquire, as Special Referee, to the Referee's Report in six of the foregoing cases;

(3) That he forged the names of the plaintiffs upon the complaints in each of the twelve adoption cases; and

(4) That he filed the proceedings in each of the foregoing cases in the Office of the Clerk of Court for Jasper County as final judgments, knowing that the documents had been forged.

Upon the filing of the complaint against the respondent, the Chairman of the Board of Commissioners on Grievances and Discipline appointed a panel of three Commissioners to conduct a hearing into respondent's alleged misconduct and practices as a member of the bar of this State, as required by Section 9 of the Rule on Disciplinary Procedure. A hearing was held on March 23, 1964, and the testimony taken. Respondent appeared at this hearing with counsel and testified. Upon the completion of the testimony, the hearing was adjourned so as to afford all parties an opportunity to review the record prior to argument. After due notice, the panel heard arguments on July 13, 1964, and subsequently filed its report under date of August 20, 1964, finding the respondent guilty of the charges and recommending that he be disbarred from the practice of law in this State. Thereafter, after due notice in accordance with the provisions of Section 11 of the Rule on Disciplinary Procedure, the Board reviewed the findings and recommendations of the panel and adopted its findings of fact, but recommended indefinite suspension of the respondent instead of disbarment as recommended by the panel. The matter is now before us pursuant to a Rule to Show Cause issued on February 11, 1965, in accordance with Section 13 of the Rule on Disciplinary Procedure, directed to respondent, requiring him "to show cause before this Court * * * on April 16, 1965, why the said report of the Board of Commissioners should not be confirmed and such disciplinary order as this Court may deem proper be issued."

In the return of the respondent he has, in addition to challenging the sufficiency of the evidence to sustain the charges against him, raised certain questions concerning the procedure before the Board, which will be first considered.

The respondent contends that he was prejudiced in the presentation of his case to the Board by its failure to furnish him in advance with a copy of the report and recommendations of the panel. This contention cannot be sustained. First, the record before us indicates that respondent did receive notice of the recommendations of the panel prior to the hearing before the entire Board. The report of the Board to this Court contains the following statement: "Due notice of more than thirty (30) days was given to all parties and their counsel of the recommendation of the panel and of the time and place of the Board meeting at which said report was to be considered for the purpose of determining its action thereon, and advising them of their right to appear before the Board at such time to be heard in oral argument and to submit briefs." In addition, although the record shows that respondent and his counsel appeared before the Board and argued the matter, there is no showing that any objection was raised at that time as to notice or that any prejudice has resulted. Under such circumstances, the failure to interpose timely objection constituted a waiver of any failure to receive prior notice of the contents of the panel's recommendations.

Under the Rule of Disciplinary Procedure, when complaint is filed against an attorney, the chairman of the Board of Commissioners on Grievances and Discipline appoints a panel composed of three members of the Board to take the testimony and report its findings. When the report of the panel is made, the Board then reviews the record and makes its report to this Court if any public disciplinary action is recommended. The rules are silent as to participation by members of the panel in the review by the Board of the panel's recommendations. The

respondent contends that the members of the panel participated in this case in the review of its findings and recomendations, and that this was error. The record is silent as to whether the members of the panel participated in the review by the Board. Assuming however that they did so participate, the respondent has failed to show any prejudice therefrom and, in the absence of such showing, the present contention cannot be sustained. The record shows that the Board, fifteen in number, adopted the findings of fact by the panel, but recommended a lesser degree of punishment. In the consideration of this question, it must be kept in mind that this Court determines whether an attorney is guilty of professional misconduct and not the Board of Commissioners. We have held that they are "merely agents of the court for the purpose of gathering and reporting the evidence, and that their recommendations are purely advisory." *Burns v. Clayton et al.,* 237 S. C. 316, 117 S. E. (2d) 300.

The remaining question concerns the sufficiency of the evidence to sustain the charges against the respondent and, if sustained, the appropriate disciplinary action to be taken. For, as stated in *Burns v. Clayton et al., supra,* "upon this court alone rests the duty and the grave responsibility of adjudging, from the record, whether or not professional misconduct has been shown, and of taking appropriate disciplinary action thereabout."

The charges of misconduct against the respondent relate to his actions in conneciton with twelve adoption cases handled by him between September and December 1962. One of the cases involved the adoption of an illegitimate child by a Negro family in Jasper County. As to the others, respondent testified that eleven mothers of illegitimate children came to his office between September and December 1962 to have the children adopted by the families with whom the children had been placed at birth. He prepared in each case unverified petitions on behalf of the adopting parents and signed the petitions as attorney, without ever

having talked with the adopting parents about the matter. It was alleged in each case, without any personal inquiry, that the adopting parents were residents of Jasper County, South Carolina, although the record indicates that they were nonresidents. The record contains petitions for the appointment of guardians *ad litem* for the children, allegedly signed by their mothers. However, the evidence casts some doubt upon the authenticity of these signatures. In all cases, the guardian *ad litem* was respondent's brother who never appeared at any hearing, never made any investigation of the facts, and whose name was signed to the papers in at least some instances by the respondent. The respondent was the only attorney involved in the cases.

Randolph Murdaugh, Esquire, was appointed as special referee in all of the cases and he testified that he held several references at which the alleged adoptive parents appeared. His opinion was that these adoptive parents were not local residents. Mr. Murdaugh had a heart attack the latter part of October 1962, and was incapacitated for some time thereafter. Even though Mr. Murdaugh was incapacitated, respondent continued to have him appointed as special referee in cases subsequently filed and, in such instances, signed Mr. Murdaugh's name to the reports of the referee without the holding of a reference. Respondent testified that he was authorized to sign the reports, but Mr. Murdaugh did not recall giving any such permission. Assuming for the moment the truth of respondent's statements in regard to the matter, he then presented through an acquaintance the papers to Judge Grimball, the presiding judge, for his signature. Under respondent's version of the matter, he knowingly submitted to the court, in some instances at least, as authentic, a record in which he had not made the slightest inquiry into the facts, had a guardian *ad litem* appointed in name only, and had signed the name of the referee to a report without a reference being held. Such conduct represented a total disregard of respondent's duty and obligation to the court as an attorney.

However, contrary to his statements, the record sustains the finding that the respondent forged the name of the presiding judge to the decrees and filed them in the public records as the final judgments of the court. The presiding judge testified that he did not sign the decrees in question and a handwriting expert verified the fact that the signatures of the judge were forgeries. The Attorney General of South Carolina testified that he had a conference in his office in Columbia with the respondent shortly after the forgeries were discovered. At this conference, he said that the respondent admitted forging the name of the presiding judge to some of the decrees and recording all of them, knowing the signatures to be forgeries. While respondent denied making these admissions, the entire record before us convincingly establishes the fact that he forged the signature of the presiding judge to the decrees and caused them to be placed upon the public records as the final judgments of the court.

After the forgeries were discovered, an indictment was presented to the grand jury for Jasper County charging the respondent with the crime of forgery, and a *no bill* was returned thereon. The respondent has pleaded the no bill by the grand jury as defense to the present charges.

The Board properly held that the return of a no bill by the grand jury did not constitute a defense to these disbarment proceedings. The return of a no bill upon an indictment in a criminal prosecution against an attorney does not preclude the institution of disbarment proceedings based upon the same acts or conduct. 7 Am. Jur. (2d), Attorneys at Law, Section 57. See annotation in 123 A. L. R. 779, 784 and cases cited therein.

Further review of the record would serve no useful purpose. The evidence presents clear and convincing proof that the respondent's conduct in handling the litigation in question, from its inception until the culmination in the

forgery of the signature of the presiding judge to the purported final orders of judgment, exhibited a total disregard by him of his professional responsibility and duty to his clients, the court, and the public.

There remains only a decision as to the disciplinary action to be taken. The judgment pronounced should be commensurate with the conduct proven. There is nothing in the conduct of the respondent in these matters to merit approval nor any circumstances to justify his actions. We regret that we find ourselves in disagreement with the recommendations of the Board, but have concluded that respondent has proved himself unworthy of the profession and should be disbarred from the practice of law in this State.

It is therefore ordered that the respondent is hereby disbarred from the practice of law in South Carolina and shall, within five days from the service of this order upon him, deliver his certificate of admission to practice law in this State to the Clerk of this Court for cancellation.