492 S.E.2d 82

**In the Matter of, William Gary WHITE, III, Respondent.**

**No. 24697.**

Supreme Court of South Carolina.

Heard Aug. 18, 1997.

Decided Oct. 13, 1997.

William Gary White, III, pro se.

Charles Molony Condon, Attorney General, and James G. Bogle, Jr., Senior Assistant Attorney General, Columbia, for complainant.

PER CURIAM:

In this attorney discipline matter, Respondent William Gary White, III, is charged with seven acts of misconduct. A panel hearing on this matter was conducted July 20–21, 1995.[1] The

---

1. We granted Respondent's motion that this hearing be made open to the public. However, we gave the panel chairperson the authority to close any part of the hearing when the chairperson felt it necessary to protect those persons having the right to confidentiality under Rule 413, SCACR, and who did not request the confidentiality provisions be lifted.

panel filed its report January 31, 1997, finding Respondent committed misconduct in three of the matters charged. As to the other charges raised, the panel found the record contained no clear and convincing evidence of misconduct and recommended they be dismissed. Regarding the appropriate sanction, it recommended Respondent receive a public reprimand with certain conditions (as described herein) for those matters constituting misconduct. The Interim Review Committee [2] ("IRC") adopted the panel's findings of fact and conclusions of law. The IRC agreed with the panel's recommended sanction, suggesting as an additional condition that Respondent be directed to contact the Law Office Management Assistance Program ("LOMAP").

■ After reviewing the record in this case, we agree with those findings and conclusions made by the panel and IRC. We further agree the appropriate sanction is a public reprimand, with conditions as set forth in this opinion, for Respondent's misconduct in the following matters.

## I. Magaline Cathy Smith Matter

Ms. Smith hired Respondent on a contingency fee basis to pursue a civil action.[3] After suit was filed and several depositions were taken, Ms. Smith became dissatisfied with Respondent's representation and decided to terminate his services. She sent him a letter to this effect April 1, 1994 in which she requested her file. She had contacted another attorney about taking her case, but he told her he needed to review the file before making a decision.

On April 11, 1994, Ms. Smith filed a complaint with the Board of Commissioners on Grievances and Discipline because Respondent had not returned her file. Over the course of the

---

2. The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. The Interim Review Committee was created to fulfill the functions performed by the Executive Committee under Paragraph 14(a) of the former Rule on Disciplinary Procedure in those cases. Citations in this opinion to Rule 413, SCACR, will be to the former Rule on Disciplinary Procedure.

3. The record does not disclose when Respondent was hired.

next several months, Respondent was repeatedly asked by the Board, Ms. Smith, her newly-consulted attorney, and other counsel representing her in a lawsuit Respondent filed against her,[4] to return the file. He refused, claiming he was asserting a retaining lien on the file.

A petition for contempt was ultimately filed with this Court on June 30, 1994, seeking issuance of a Rule to Show Cause and an order requiring Respondent to return the file. The day after this petition was filed, Respondent returned the file. Part of the file included depositions of several witnesses. However, Respondent only provided sealed depositions. The Attorney General's office requested copies of the depositions on August 4, 1994. It was not until October 7, 1994, two days after the contempt hearing held before this Court, that Respondent provided deposition copies.[5] We then dismissed the contempt petition, finding Respondent had delivered the required information. Thus, it took approximately six months for Ms. Smith to receive her complete file. During this time, her newly-consulted attorney had to request her case be removed from the active trial roster because he could not evaluate her case without the depositions.[6]

 The panel found Respondent engaged in misconduct in his refusal to return Ms. Smith's file. It recommended Respondent receive a public reprimand. We agree. Under the Rules of Professional Conduct, upon termination a lawyer shall "take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled...." Rule 1.16(d), Rule 407, SCACR. "The lawyer may retain papers [i.e. as security for a fee] relating to the client to the extent permitted by other law." *Id.* An attorney's assertion of a retaining lien is not *per se* unethical. *In re Anonymous Member of the Bar,*

---

4. This lawsuit did not arise from any fee dispute between Respondent and Ms. Smith, but apparently stemmed from a separate matter between them.

5. Respondent claimed the copies could not be found in his office. He stated after he ordered replacement copies, the original copies were found in another attorney's office who was associated on the case.

6. This attorney ultimately decided not to take Ms. Smith's case and as of the panel hearing she had no representation in it.

287 S.C. 250, 335 S.E.2d 803 (1985). Rather, the attorney must consider whether retention of a file would be unethical on a case by case basis. *Id.* We elaborated on what constitutes unethical retention of a client file in *In re Anonymous:*

> The application of this standard requires the lawyer to evaluate his or her interests against interests of the client and of others who would be substantially and adversely affected by assertion of the lien. The lawyer should take into account the financial situation of the client, the sophistication of the client in dealing with lawyers, whether the fee is reasonable, whether the client clearly understood and agreed to pay the amount now owing, whether imposition of the retaining lien would prejudice important rights or interests of the client or of other parties, whether failure to impose the lien would result in fraud or gross imposition by the client, and whether there are less stringent means by which the matter can be resolved or by which the amount owing can be secured.

*Id.* at 252, 335 S.E.2d at 805 (emphasis added) (internal citations omitted). *See also In the Matter of Tillman,* 319 S.C. 461, 462 S.E.2d 283 (1995) (attorney bears the burden of showing justification to assert lien because client is financially able but deliberately refuses to pay a fee clearly agreed upon and due).[7]

Considering these principles, we find Respondent's retention of Ms. Smith's file exceeded ethical boundaries. At the panel hearing, Respondent testified he retained the file because Ms. Smith owed him $600 in deposition costs. However, Ms. Smith testified she thought she paid all of the deposition costs. Respondent admitted he never billed her for these or any other costs. Furthermore, the record shows, and Respondent admits, he never clearly specified what amount he claimed was owed by Ms. Smith *during the time he was*

---

**7.** *In re Anonymous Member* strongly suggests that if a client has good cause to terminate representation, the attorney can never assert a retaining lien on the file. In other words, the right to assert a retaining lien at all only exists where an attorney has been terminated without good cause. *See* 287 S.C. at 252 n. 1, 335 S.E.2d at 804 n. 1. We decline to address whether Ms. Smith had good cause to terminate Respondent's representation, for we find that even if she did not, Respondent's retention of her file was improper.

*retaining the file.*[8] Respondent testified at the hearing the amount owed was not important; he just wanted a general assurance that whatever interest he may have would be protected. We hold this is an improper basis upon which to assert a lien. From this record it is clear this was not a situation where the client knew how much was owed and deliberately refused to pay it. Here, the client was never made aware of what was owed. Thus, we find Respondent has failed to meet his burden in this case and committed misconduct in retaining Ms. Smith's file.

## II. The Harry A. Hancock Matter

Respondent and attorney Harry A. Hancock were involved in a civil action, filed in the Court of Common Pleas for the Eleventh Judicial Circuit, entitled *Harris v. White v. Harris.* The original complaint was brought against Respondent by his former investigator, Lee Harris. Hancock represented Harris; Respondent represented himself. Respondent then filed a cross-complaint against Ms. Smith (*see supra* note 4), Harris, and Hancock.

After Respondent was found in default in the original complaint, he wrote a letter to the presiding judge ostensibly to address the default issue. In this letter, Respondent commented on the facts and merits of the action, discussed, *inter alia,* the opposing parties' trial strategy, and made disparaging comments about Hancock and the parties he was

---

8. On April 5, 1994, Respondent wrote Ms. Smith's newly-consulted attorney, asking him to let Respondent know "whether or not you will protect my interest in the file." This other attorney responded by letter dated April 8, 1994, in which he stated, "If you will be more specific as to what your interests are that you would like protected, I would be glad to discuss that with Ms. Smith." Respondent answered by letter dated April 13, 1994, claiming Ms. Smith owed "around $1500" in deposition and other costs. Respondent wrote this attorney another letter dated May 16, 1994 offering to "get rid of the file" if the attorney would agree not to give any documents therein to Ms. Smith and to "protect whatever interest I have in the file." No monetary amount was requested. This attorney again responded by letter dated May 17, 1994, that he could not agree to accept the file on the condition he not give any materials to Ms. Smith. He then stated, "On two occasions, you have asked me to protect your interest. I still don't know what interest you claim...." The record contains no other communication by Respondent indicating what specific monetary interest he was claiming.

representing. Respondent did not send Hancock, as the opposing party's attorney, a copy of this letter.

The panel found Respondent committed misconduct. It recommended Respondent receive a public reprimand. We agree. Under Rule 3.5, Rule 407, SCACR, lawyers are prohibited from communicating *ex parte* with a judge unless otherwise permitted by law. Respondent has offered no legal exception justifying his letter, nor have we found one. Rather, he admitted the communication was *ex parte*, arguing he merely "overlooked" sending Hancock a copy of the letter.

### III. The Escrow Account Matter

Pursuant to a subpoena, Respondent provided information showing he had written numerous checks out of his escrow account for personal expenses. Respondent admits the checks were written for personal expenses, but states they were drawn from funds representing fees he earned. Essentially, Respondent was not transferring fees earned from his escrow account into a separate account before paying his expenses; he simply paid his expenses from the escrow account.[9]

The panel found Respondent's practice of "living out of" his trust account constituted misconduct and recommended a public reprimand. Additionally, it recommended Respondent's escrow account be audited for a minimum of eighteen months "to ensure he has corrected the problem." The panel also suggested that while this monitoring was occurring, Respondent's complete office financial records be monitored "to determine whether Respondent is maintaining an accurate record of his earnings, deposits, and disbursements." The IRC agreed with the panel's findings and recommendations, but recommended as an additional condition that Respondent be directed to contact LOMAP.

We agree Respondent's handling of his escrow account constitutes misconduct. Commingling of an attorney's personal funds with client trust funds is clearly prohibited. Rule 1.15(a), Rule 407, SCACR ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's

---

**9.** There has been no allegation or findings Respondent misappropriated client funds.

own property"). *See also* Comment, Rule 1.15(a), Rule 407, SCACR ("All property which is the property of clients of third persons should be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts"). We have sanctioned attorneys for this offense regardless of whether misappropriation of client funds resulted from the commingling. *See, e.g., In the Matter of Kenyon and Lusk,* 327 S.C. 307, 491 S.E.2d 252 (1997) (writing personal checks from lawyers' escrow accounts from funds earned as fees to avoid having to withdraw the fees and place them in business account improper); *In the Matter of Amick,* 288 S.C. 486, 343 S.E.2d 623 (1986); *In re Drose,* 275 S.C. 414, 272 S.E.2d 173 (1980); Robert M. Wilcox, South Carolina Legal Ethics § 3.3.2 (1992) ("Discipline is not avoided simply because the clients suffer no pecuniary loss").

## CONCLUSION

We find Respondent has committed misconduct in the above matters warranting a public reprimand with the conditions recommended by the panel and IRC.[10] Thus, we find Respondent's trust and office accounts should be monitored for a period of eighteen months to insure he is maintaining proper separate accounts for client and personal funds, and to insure he is keeping accurate records of earnings, deposits, and client disbursements.[11] Finally, Respondent shall contact LOMAP within thirty days of the filing of this opinion to make arrangements to participate in the program.

**PUBLIC REPRIMAND.**

---

10. Regarding the other matters charged in the complaints, we agree with the panel and IRC these allegations are not supported by clear and convincing evidence and therefore order they be dismissed.

11. This monitoring shall be accomplished by the Chairman of the Commission on Lawyer Conduct, or his designee, in such a manner as is approved by the Commission.