521 S.E.2d 497

**In the Matter of Vannie WILLIAMS, Jr., Respondent.**

**No. 25002.**

Supreme Court of South Carolina.

Submitted Aug. 2, 1999.
Decided Sept. 27, 1999.

Clifford Scott, of Columbia, for respondent.

Attorney General Charles M. Condon, Senior Assistant Attorney General James G. Bogle, Jr., and Henry B. Richardson, Jr., all of Columbia, for the Office of Disciplinary Counsel.

PER CURIAM:

In this attorney disciplinary matter, respondent and disciplinary counsel have entered into an agreement under Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE), Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to be publicly reprimanded. As a special condition of this agreement, respondent also agrees to make restitution to his client. We accept the agreement.

Respondent stipulated to the following facts:

### Representation of Gwendolyn Liles

On June 27, 1997, Gwendolyn Liles (Liles) retained respondent to represent her in a personal injury action. The retainer agreement with respondent called for a fee of 33% of the "gross recovery of any and all settlements in connection with this representation."

The insurance company involved in compensating Liles for her injury was Empire Fire & Marine Insurance Company (Empire). Respondent contacted Empire on Liles' behalf on or about July 17, 1997, and entered into negotiations regarding settlement of Liles' claim. Respondent suggested that Empire pay an amount of compensation at the policy limit. Empire's adjuster countered with a proposed structured settlement. The proposed agreement, dated July 25, 1997, was sent to respondent.

On August 18, 1997, respondent and Liles entered into a new retainer agreement. The original version of this agreement contained the phrase, "That if no lawsuit is filed, the attorney shall receive as fee thirty-three and one third percent (33 1/3%) of actual costs of the Structured Settlement if [the] fees paid in one lump sum, OR the fees may be based on the gross recovery of any and all settlement, provided that the fees shall be paid on a structured basis consistent with the payments to the client ..." Prior to Liles signing the new agreement, respondent modified the above passage to read, "That if no lawsuit is filed, the attorney shall receive as fee thirty-three and one-third (33 1/3%) of actual *cash guaranteed amount* of the structured settlement if the fees paid in one lump sum OR the fees may be based on the gross recovery of any and all settlement." (modification emphasized).

The eventual settlement agreed upon called for (1) an initial payment of $369,433 that was received by respondent on September 22, 1997, and (2) the purchase of an annuity to pay his client a monthly fee for a number of years. Respondent signed his client's name to the reverse side of the check, without written permission, and without Power of Attorney, and deposited the check into his escrow account. Respondent did not show Liles the check.

The cost of the annuity to Empire was $305,567, making the total cost of the settlement $675,000. The cost of the annuity was disclosed to respondent on or about September 5, 1997 in the negotiations surrounding the settlement.

The modification of the retainer agreement was in violation of state law governing fee calculations as discussed in this Court's recent decision in *Matter of Fox,* 327 S.C. 293, 490 S.E.2d 265 (1997). In *Fox,* this Court reaffirmed existing law

that to calculate a fee an attorney must discount an annuity to its present value. Fox had added together the guaranteed payments, and then calculated his fee of one-third, exactly as respondent did in the second retainer agreement in the instant case.

Accordingly, respondent should have been entitled to a fee of no more than thirty-three and one third percent of $675,000, or approximately $222,750, under the second retainer agreement.

### Statements to the Commission on Lawyer Conduct

Due to respondent's conduct, both Liles and her sister, Laterna Jones, filed letters of complaint with the Commission on Lawyer Conduct. In response to these letters, the Commission contacted respondent concerning his representation of Liles. Respondent replied in a letter that he had taken a fee of $275,348.98. If this had been his fee, then he charged an excess of $52,598.98. In fact, this was not his fee, because he issued an escrow account check to himself, for the fee, in the amount of $275,000.

In his response to the Notice of Full Investigation, Respondent repeated the above figures, and again made a false statement to the Commission because the amount of the fee was incorrect and inconsistent with the escrow check actually written.

### The Hospital Lien and Disbursement Sheet

One of the medical facilities that treated Liles was North Carolina Baptist Hospital (Hospital). By letter dated July 10, 1997, the Hospital notified respondent that it was asserting a lien against the settlement, pursuant to North Carolina General Statutes Sections 44–49 and 44–50. On August 14, 1997, the Hospital again notified respondent of their lien by letter, noting total charges due of $53,615.36.

The settlement provided that Liles would acknowledge certain liens from various sources, including the Hospital, and be responsible for the payment of those liens. Despite the settlement's provisions, respondent attempted to negotiate a settlement for the hospital bill. Respondent wrote the liability counsel for the Hospital on November 12, 1997, requesting an

adjustment or reduction of the bill. In that letter, respondent represented that the settlement had been an initial payment of $269,433, with monthly payments of $1,500 for the life of Liles, with 420 payments guaranteed. He did not disclose the existence of any other sums withheld on her behalf, and requested that the Hospital reduce its outstanding bill. The Hospital, through its counsel, responded with an offer to reduce the hospital bill by ten percent and accept $48,253.82 in full settlement of its lien. Respondent never acknowledged nor settled the Hospital's statutory lien.

Instead, respondent wrote the Hospital on December 4, 1997, enclosing an escrow account check in the amount of $32,859.99 as payment for services provided by the hospital to Liles. Attached to the letter was a disbursement sheet, showing total settlement and recovery of $999,433. Deducted from the total settlement was respondent's legal fee of $333,-144.33, together with expenses, bringing the total deduction to $336,573.01, plus the initial cash payment of $369,433. These deductions from the total settlement amount of $999,433 left a balance of $32,859.99. This was the amount remitted to the Hospital.

The disbursement sheet was a false statement, because respondent did not take a legal fee of $333,144.33. Instead, respondent's legal fee was, as determined by an escrow account check, $275,348.98. In the alternative, his legal fee, as represented to the Commission on Lawyer Conduct in both his letter of response and his response to the Notice of Full Investigation, was $275,348.98. Finally, the disbursement sheet was also a false statement to the Hospital because it did not disclose the disbursement of $45,000 to Liles. Thereafter, the Hospital contacted Liles directly, seeking to collect the remainder due on her hospital bill, in the amount of $15,-695.51.

## Advances

In his replies to the Commission on July 13, 1998, and following the Notice of Full Investigation, respondent falsely stated that Liles had been paid $57,600 from the proceeds of the initial check of $369,433. However, during his representation of Liles, respondent actually made a series of advances to Liles from his general account. Respondent made these ad-

vances both prior to and after the receipt of the settlement from Empire. The checks were made payable to a variety of concerns and totaled $10,263.36.

## Additional Fees

After issuing an escrow account check to himself in the amount of $275,000 on September 25, 1997, respondent wrote himself other escrow account checks in the amount of $5,000 on October 22, 1997, and $11,575 on December 3, 1997. On the same day respondent represented to the Hospital that the only money left from the settlement was $32,859.99, respondent wrote the escrow account check for $11,575. These sums represented reimbursement for both fees and advances to Liles. No accounting was ever given to Liles concerning how the reimbursements were calculated. In addition, respondent did not disclose the reimbursement checks in his reply to the inquiry of the Commission on Lawyer Conduct, or in his reply to the Notice of Full Investigation.

No combination of the above checks for fees, advances, or costs equals the amount respondent represented to be his disbursement to Liles, in his response to the Commission's initial letter, and Notice of Full Investigation, where he represented that Liles had been paid $57,600. Respondent therefore made false statements to the Commission during the course of its investigation regarding the accuracy of the funds disbursed to Liles.

## Costs

In his replies to the Commission's inquiry on July 13, 1998, and the Notice of Full Investigation, respondent represented that he had recovered costs incurred in representing Liles in the amount of $3,624.03. In reply to a subpoena, respondent submitted receipts and bills in the amount of approximately $428. In his attempt to comply with a Notice to Appear, respondent was also unable to provide an accounting which would match the claimed amount. In addition, the costs set forth on the false Disbursement Sheet respondent submitted to the Hospital totaled yet another amount, $3,428.68.

*Disbursement Sheet*

Respondent never gave a completed, signed Disbursement Sheet to Liles, showing all sums received on her behalf, all disbursements, and disbursements to her.

*Conclusion*

Respondent has engaged in conduct which violates the Rules of Professional Conduct, Rule 407, SCACR. He failed to provide competent representation by not using the accounting methods and procedures meeting the standards of competent practitioners. Rule 1.1. He failed to comply with demand for payment and exceeded his scope of representation. Rule 1.2. He failed to keep his client reasonably informed about the status of the case and respond to requests by failing to make a proper accounting to his client. Rule 1.4. He failed to properly safeguard his client's property by neglecting to promptly notify his client of the settlement and by fraudulently endorsing the settlement check. Rule 1.15. He made false statements to the Commission on Lawyer Conduct. Rule 3.3. He made false statements to the hospital, and created a false Disbursement Sheet. Rule 4.1. He committed professional misconduct by violating the Rules of Professional Conduct. Rule 8.4(a). He engaged in conduct involving moral turpitude. Rule 8.4(c). He engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. Rule 8.4(d). He engaged in conduct prejudicial to the administration of justice. Rule 8.4(e).

In addition, respondent has engaged in conduct constituting violations of Rule 7 of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR. He violated the Rules of Professional Conduct, Rule 407, SCACR. Rule 7(a)(1), RLDE. He brought the legal profession into disrepute and polluted the administration of justice by his inappropriate actions. Rule 7(a)(5), RLDE.

Accordingly, we reprimand respondent.

PUBLIC REPRIMAND.

Associate Justice JOHN H. WALLER, Jr., not participating.