589 S.E.2d 197

**In the Matter of David E. BELDING, Respondent.**

**No. 25750.**

Supreme Court of South Carolina.

Heard Sept. 25, 2003.
Decided Nov. 10, 2003.

Attorney General Henry Dargan McMaster and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for the Office of Disciplinary Counsel.

John P. Freeman, of Columbia, for Respondent.

PER CURIAM:

In this attorney disciplinary matter, we hold that David E. Belding ("Respondent") shall be definitely suspended from the practice of law for a period of one year.

## FACTS

### *Rucker–Taylor Matter*

Todd Hunnicutt ("Mr. Hunnicutt") and Elizabeth Hunnicutt ("Ms. Hunnicutt") were having marital problems. According to Respondent, in the late summer of 2000, Mr. Hunnicutt approached Respondent and told him that he and his wife were undergoing a "Gestalt" method of therapy. Mr. Hunnicutt asked Respondent to create a fictitious set of divorce documents to "shock" his wife as prescribed by the therapy. According to this method, Ms. Hunnicutt would be "shocked" into mending the marriage upon seeing the fictitious documents.[1]

As requested, Respondent prepared the documents. He drafted a Summons and Complaint titled *Elizabeth Stenzel Hunnicutt v. A. Todd Hunnicutt.* The documents bore a fictitious docket number with the last three digits handwritten, a fictitious filing stamp for the Clerk of Court of Newberry County, and the signature of "Mark J. Taylor," as Respondent purported to be.

Respondent continued to draft documents that appeared authentic.[2] He drafted a fictitious Consent Order to Change

---

1. Dr. Peter Kilman, the couple's marriage counselor, testified at the hearing that, under his direction, the couple never underwent "Gestalt" therapy.

2. Respondent made mistakes in his efforts to make the documents appear authentic. He signed Mark Taylor's ("Taylor") name as "Mark

Venue from Newberry to Lexington County. On the document, Respondent signed the names "Mark J. Taylor" and "Warren Powell."[3] He also signed "J. M. Rucker" in the block designated "presiding judge."

Respondent then drafted a letter on his own letterhead, which purported to be written to Taylor, indicating that he, Respondent, was now representing Mr. Hunnicutt in the divorce.

Respondent then prepared a false "Defendant's First Set of Interrogatories and First Request for Production." He signed his assistant's name to the certificate of mailing, purporting proper service of the Interrogatories. He then drafted a fictitious Request for Hearing form, bearing "Mark J. Taylor" as counsel for Ms. Hunnicutt. Respondent then prepared a handwritten letter on his letterhead addressed to "Todd" and attached a fictitious settlement agreement bearing the false docket numbers.

The documents are entirely false and were never filed in any court. Respondent gave the documents to Mr. Hunnicutt. Ms. Hunnicutt found the documents in the trunk of Mr. Hunnicutt's car and was confused because she had not initiated the divorce action as suggested in the documents. She faxed the documents to a cousin in Missouri. The Missouri attorney confirmed that the documents appeared authentic and that a divorce action appeared to be underway.

The Missouri attorney contacted Taylor and Judge Rucker, neither of whom knew about the matter. In turn, Taylor and Judge Rucker contacted the Commission on Lawyer Conduct. The Attorney General's Office joined this matter with the Jennifer Carmen matter and issued formal charges accordingly.

---

J. Taylor" but Taylor signs his name "J. Mark Taylor." Respondent also misnamed Taylor's firm. In addition, Respondent signed Judge Rucker's name "J.M. Rucker" whereas Judge Rucker signs his name "John M. Rucker."

**3.** Warren Powell ("Powell") has never represented Mr. or Ms. Hunnicutt. But Powell did represent Mr. Hunnicutt's first wife in her divorce with Mr. Hunnicutt.

### *Jennifer Carmen Matter*

In 1997, Jennifer Carmen ("Ms. Carmen") hired Respondent in an action to increase child support payments from her former husband. Respondent brought the action in Lexington County Family Court. Ms. Carmen's former husband, Mark Carmen ("Mr. Carmen"), who was represented by Nancy M. Young ("Young"), counterclaimed for additional visitation with the couple's son.

Respondent told Ms. Carmen that a hearing would take place on June 29, 1998. The Lexington County docketing clerk sent Respondent a Notice of Hearing indicating that the hearing had been set for June 23, 1998. Respondent failed to send Ms. Carmen a copy of the Notice, and he did not inform her of the change. As a result, Ms. Carmen and Respondent were not present at the June 23 hearing.

After the June 23 hearing, Young called Respondent and offered to settle the case. Respondent was unaware that he had missed the hearing. Young presented Respondent with an offer that would increase visitation rights for Mr. Carmen and would increase child support for Ms. Carmen. Respondent told her that he would call Ms. Carmen to obtain her consent to settle the matter. He was unable to reach Ms. Carmen and obtain her approval. Nevertheless, he called Young and accepted the offer to settle.

On June 26, 1998, Mr. Carmen contacted Ms. Carmen to ask her when he could pick up their son. Ms. Carmen did not know about the June 23 hearing or the subsequent settlement agreement. She contacted Respondent to find out about the status of her case. Respondent assured her that he would call the court to find out the results of the hearing. He admitted to missing the hearing date and encouraged her to agree to the terms of the proposed settlement. He reiterated that the settlement terms were consistent with what a judge would order, but Ms. Carmen refused to consent to the proposed settlement.

In late July 1998, Ms. Carmen went to Respondent's office to retrieve her file. The file contained a copy of the settlement agreement that she never signed.

On July 29, 1998, Young filed a Motion to Compel Settlement. Respondent received a copy of this Motion and informed Ms. Carmen that a hearing on the Motion was set for September 4, 1998.

On August 4, 1998, Respondent filed a Motion to be Relieved as Counsel in the case. He did not notify Ms. Carmen that he had filed this Motion.

On September 4, 1998, Respondent and Ms. Carmen attended the scheduled hearing. The court was the first to inform Ms. Carmen of Respondent's Motion to be Relieved as Counsel. She agreed to find another counsel. Judge Sawyer issued an Order granting Young's Motion to Compel Settlement but ruled that the issues of reasonableness and fairness would be heard *de novo* on November 17, 1998.

After Respondent was relieved as counsel, Ms. Carmen hired Kenneth H. Lester ("Lester") to represent her at the November hearing. Lester also helped negotiate a settlement that was more advantageous to Ms. Carmen than the settlement that Respondent negotiated for her. Lester's fees totaled approximately $7,000.

## LAW/ANALYSIS

We hold that Respondent's conduct constituted a violation of Rules 1.1 (competence), 1.2 (scope of representation), 1.4 (communication), 1.16 (terminating representation), 4.1 (truthfulness and statements to others), and 8.4(a), (d), and (e) (misconduct) of the *Rules of Professional Conduct,* Rule 407, SCACR, and warrants discipline in accordance with Rule 7(a)(3) (definite suspension from the practice of law) of the *Rules for Lawyer Disciplinary Enforcement,* Rule 413, SCACR.

We hold that Respondent violated Rule 4.1, which states that a lawyer shall not knowingly, "make a false statement of material fact or law to a third person" or "fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

This Court has recently heard two cases involving lawyers who engaged in conduct similar to Respondent's conduct. In

*In the Matter of Mozingo,* 330 S.C. 67, 497 S.E.2d 729 (1998), this Court disbarred an attorney for signing Chief Justice Toal's name on a falsified document. The attorney represented his client in an action to reduce or eliminate child support and alimony payments. To help the client appease his family, the attorney signed Justice Toal's name to a letter stating that the court had received the client's Motion and was in the process of eliminating the requirement that his wages be garnished.

*In the Matter of Walker,* 305 S.C. 482, 409 S.E.2d 412 (1991), a client hired an attorney to expunge the client's record. Two years later, the client saw his attorney at a party. The attorney told the client that he "was a free man" when in fact the attorney had done nothing to expunge his client's record. To support his misrepresentation, the attorney signed a circuit court judge's name to a false order and gave it to the client. The client, concerned that the document did not appear to be properly filed, went to the Clerk of Court to file it. The Clerk rejected the order because the signature had been forged. The attorney argued that the only reason that he signed the judge's name was so that client could see how the order would appear. The attorney was indefinitely suspended. Chief Justice Gregory dissented, stating that the attorney should have been disbarred.

■ In the present case, Respondent drafted false documents that included names of real lawyers and a judge. He argues that he never intended for the documents to be presented as if they were authentic, yet the record indicates that he made a conscious effort to make the documents appear authentic.

Respondent further argues that he has not violated Rule 4.1 because he lacked the intent to commit criminal forgery as defined by the Court of Appeals in *State v. Wescott,* 316 S.C. 473, 477, 450 S.E.2d 598, 601 (Ct.App.1994). We disagree. Rule 4.1 does not require that criminal conduct be shown in order to justify a sanction. Whether Respondent committed criminal forgery is a collateral determination that is not dispositive of a determination of Respondent's misconduct under Rule 4.1.

This Court generally imposes severe sanctions for attorneys who sign another's name without authorization.[4] However, we elect to impose a less severe sanction for this violation because we find that the facts of *Mozingo* and *Walker* are distinguishable from the present case. In both *Mozingo* and *Walker,* attorneys actively presented false documents as if the documents were authentic. In this case, the documents were never presented as authentic; rather, Ms. Hunnicutt found the documents in Mr. Hunnicutt's car.

The Attorney General's Office presented no direct evidence that Respondent used these documents to facilitate fraud upon the court. Nevertheless, the documents appear authentic and Respondent signed the names of real people, including a family court judge. This Court will impose substantial sanctions upon any attorney who signs the name of a judge, regardless of the use made of the document.

■ We hold that Respondent violated Rule 1.2(a), which provides that "[a] lawyer shall abide by a client's decision whether to accept an offer of settlement." This Court has frequently held that failing to receive a client's consent before entering into a contract is a violation of Rule 1.2. *See In the Matter of Edens* 344 S.C. 394, 544 S.E.2d 627 (2001) (attorney refinanced loan without client's consent); *In the Matter of Lewis,* 344 S.C. 1, 542 S.E.2d 713 (2001) (in approximately fifty-one instances, attorney signed settlement agreements without client's consent).

In this case, Respondent accepted Young's offer to settle without consulting Ms. Carmen and obtaining her consent. Respondent denies that he and Young entered into a binding settlement agreement. Nevertheless, Young prepared an agreement, and the court granted a Motion to Compel settlement. That Respondent attempted to reach Ms. Carmen when Young proposed the settlement demonstrates that he

---

4. *See Mozingo,* 330 S.C. 67, 497 S.E.2d 729 (1998) (disbarment for signing judge's name to a false letter); *Walker,* 305 S.C. 482, 409 S.E.2d 412 (1991) (indefinite suspension for signing circuit court judge's name to expungement order); *Cate v. Rivers,* 246 S.C. 35, 142 S.E.2d 369 (1965) (disbarment for signing judge's name to twelve adoption decrees); *State v. Belcher,* 249 S.C. 301, 153 S.E.2d 921 (1967) (disbarment for signing name of special referee and judge to divorce decree).

knew he needed his client's consent in order to proceed, yet he proceeded anyway.

We also hold that Respondent violated Rule 1.4(a) and (b). Rule 1.4(a) states that "[a] lawyer shall keep a client reasonably informed about the status of a matter." Respondent admits that he failed to inform his client about the September 23, 2003 hearing.

Rule 1.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Respondent failed to inform Ms. Carmen about the settlement negotiations. He also failed to properly inform Ms. Carmen of her rights and options upon his Motion to be Relieved as Counsel.

We hold that Respondent violated Rule 1.16, which states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client."

This Court has reiterated the policy considerations of proper notice upon intention to withdraw as counsel. In *Ex Parte Strom*, this Court held that "[s]trong policy considerations dictate that a client and the court must be unequivocally informed when an attorney intends to withdraw from representing a party, for whatever reason." 343 S.C. 257, 259, 539 S.E.2d 699, 701 (2000). Respondent's notice was less than "unequivocal." Ms. Carmen was entitled to notice that Respondent's Motion to be Relieved as Counsel had been filed.

Upon learning that he missed the June 23, 1998 hearing, Respondent engaged in a charade to conceal his mistakes. Rather than trying to mitigate the damage he caused to his client, Respondent orchestrated an unauthorized settlement. When his client would not consent to that settlement he attempted to be relieved as counsel. We believe that when an attorney attempts to cover up bad acts in lieu of continuing to remain an active advocate for his client, he subjects himself to substantial sanctions.

Consequently, we suspend Respondent for one year, effective as of the date of this opinion, and order him to pay the

costs of the disciplinary proceedings. Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, of Rule 413, SCACR.

TOAL, C.J., WALLER, BURNETT, PLEICONES, JJ., and Acting Justice REGINALD I. LLOYD, concur.