663 S.E.2d 21

**In the Matter of William Gary WHITE, III, Respondent.**

**No. 26482.**

Supreme Court of South Carolina.

Heard April 1, 2008.
Refiled June 23, 2008.

336

Lesley M. Coggiola, Disciplinary Counsel, C. Tex Davis, Jr., Senior Assistant Disciplinary Counsel, of Columbia; for Office of Disciplinary Counsel.

Irby E. Walker, Jr., of Conway; for Respondent.

PER CURIAM.

This is an attorney disciplinary matter involving a Complaint against William Gary White, III (Respondent) for his representation of a client in a personal injury case. After a full investigation by the Office of Disciplinary Counsel (ODC), the Commission on Lawyer Conduct filed formal charges against Respondent. After a hearing before the Commission on Lawyer Conduct Panel (Panel), the hearing panel recommended Respondent be sanctioned to a ninety-day definite suspension from the practice of law and be required to pay the costs of the proceedings. Due to the gravity of Respondent's misconduct, we believe a harsher sanction is warranted. After we issued our original opinion suspending Respondent for six months and ordering him to pay the costs of the proceedings, Disciplinary Counsel petitioned for rehearing. We deny the petition for rehearing, withdraw our original opinion in this

matter, and substitute it with this opinion which corrects a single factual statement that Respondent gave testimony to Disciplinary Counsel pursuant to a Notice to Appear and Subpoena rather than appearing as the "sole witness for a hearing conducted by disciplinary counsel before an investigative panel."

## FACTS

On October 5, 2004, Client was involved in an automobile accident in which she sustained injuries. Three days later, Client sought to retain Respondent to represent her to recover for her injuries and property damage. During the initial meeting, Client signed a retainer agreement which stated in part, "I authorize my attorney to receive settlement checks on my behalf, endorse my name and deposit same for distribution."

In the latter part of July 2005, Respondent negotiated a settlement with GEICO in the amount of $5,500. In a letter dated August 3, 2005, GEICO submitted a Release to Respondent and referenced a settlement check. According to the letter, the settlement check dated August 3, 2005, had been sent under a separate cover. The letter instructed Respondent to hold all funds in escrow until Respondents' clients had signed and returned the Release to GEICO. The Release and settlement check were to be signed by Client and her husband. Client's husband was not represented by Respondent and had never accompanied his wife to any of her meetings with Respondent. Upon receipt of the check, Respondent endorsed it by signing his name, Client's name, and her husband's name. Respondent deposited the check into his trust account and then disbursed his legal fees from the settlement proceeds and transferred the amount into his operating account.

On August 22, 2005, Client met with Respondent who informed her that the case was closed and there was nothing else that could be done despite Client's complaints that she was still in pain and receiving medical treatment. Client expressed dissatisfaction with the settlement and ceased any further contact with Respondent. In December 2005, Respon-

dent's office contacted Client in a failed attempt to get Client to pick up her settlement check.

In May 2006, Client retained another attorney (Attorney) to represent her in a legal malpractice action against Respondent and to further pursue her personal injury claim. During Attorney's investigation of the personal injury case, she discovered from GEICO that a Release had not been signed. Because Respondent had retained the settlement proceeds, Attorney corresponded in writing with him requesting that he return the proceeds to GEICO in order that she could settle Client's case. In his responses, Respondent claimed that Client had authorized him to settle the case and he was not required to return the funds. Respondent also challenged Attorney's allegation that Client had an additional claim and implied that such a claim would be fraudulent.

Ultimately, Respondent returned the settlement proceeds to GEICO less his fee of $1,879.75. Following the return of the funds, Attorney negotiated a settlement of $15,000 from GEICO less the fees retained by Respondent. Attorney also settled with State Farm, Client's insurance carrier, for $50,000, which represented her underinsured coverage. This settlement took into account the medical bills that Client acquired after she terminated her representation with Respondent, which included a rotator cuff surgery in September 2005 for an injury attributed to the October 2004 automobile accident.

Due to Respondent's conduct, Client filed a Complaint against Respondent with the ODC. On May 25, 2006, ODC notified Respondent regarding the investigation of Client's Complaint. Respondent filed a response to the notice on June 22, 2006. On November 30, 2006, Respondent gave testimony to Disciplinary Counsel pursuant to a Notice to Appear and Subpoena.

Based on its investigation, the investigative panel authorized formal charges against Respondent. The ODC filed formal charges against Respondent on March 22, 2007. In his Response to the charges, Respondent admitted he: (1) had negotiated the settlement on behalf of Client; and (2) endorsed the settlement check with his name and Client's name. Because he believed that Client had authorized him to settle

her case, he denied any misconduct. Although he neither admitted nor denied signing Client's husband's name, he admitted that he deposited the settlement check in his trust account and transferred the amount of his legal fees into his operating account. He further admitted that at the time of the disbursement of the legal fees Client had not signed any type of settlement or disbursement sheet.

At the hearing before the Panel, the following witnesses were presented: Client, Client's husband, Attorney, and another witness (Witness A)[1] who recounted Respondent's actions.

Respondent gave a different account of his representation of Client. Respondent, a sole practitioner, testified he had practiced law for thirty-one years during which time he had handled personal injury cases. In terms of representing Client, Respondent testified he felt Client was "anxious to settle" given she frequently called his office to inquire about a settlement. Because he believed that Client was released from medical treatment on July 8, 2005[2], he pursued a settlement with GEICO in the latter part of July 2005. According to Respondent, Client authorized him to settle her case for $6,000. Respondent claimed he entered into an agreement with GEICO to settle the case after several failed attempts to consult with Client regarding a settlement. He further stated that in all of his years of practice he had never settled a claim without his client's permission.

Respondent admitted that after receiving the settlement check from GEICO he signed Client's name to the check. Although he could not specifically recall signing Client's husband's name to the check, he testified that if he signed the

---

**1.** Witness A, who worked for Respondent as an administrative assistant during the Client matter, testified she had been present when Respondent returned phone calls to Client. She further testified she spoke with Client several times a week regarding her case. Additionally, she claimed Client had told her that she had been released from her doctor prior to August 2005. However, Witness A stated Client never told her that she wanted to settle her case.

**2.** Respondent offered into evidence a message from his office phone log on July 8, 2005, stating that Client was released from the doctor and ready to proceed. Respondent claimed to have Client's medical bills prior to entering into the agreement with GEICO.

check it was done without a fraudulent intent. Respondent further admitted he deposited the settlement check in his trust account and transferred the amount of his legal fees into his operating account. Respondent believed this conduct was permissible and not in violation of GEICO's instructions because he received the settlement check prior to receiving GEICO's letter. Respondent further testified he did not believe any of his conduct, while representing Client, was unethical.

On cross-examination, Respondent admitted he sent a medical release to Client's orthopedist on August 22, 2005, in which he requested Client's medical records from August 1, 2005. Respondent was unable to explain why he made this request after he entered into a settlement agreement with GEICO in July 2005. In terms of endorsing the settlement check, Respondent conceded that he was not authorized to sign for Client's husband; however, he claimed he did so because he was concerned about losing the check before it was properly endorsed.

After the hearing, the Panel found Respondent engaged in misconduct in violation of the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1, RPC (Competence); Rule 1.2, RPC (Scope of Representation; Allocation of Authority between Client and Lawyer); Rule 1.4, RPC (Communication); Rule 1.5 (Fees); Rule 1.15, RPC (Safekeeping Client's Property); and Rules 8.4(d) and (e), RPC (Misconduct). The Panel recommended that Respondent be suspended for a period of ninety days and pay the costs of the proceedings.

## DISCUSSION

Although Respondent raises eleven exceptions to the Panel's report, we believe Respondent is essentially challenging the Panel's: (1) factual findings; (2) decision regarding the exclusion of certain testimony; and (3) imposition of a ninety-day suspension.

■■■■ "This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In re Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "Although this Court is not bound by the findings of the Panel and Committee, these findings are

entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of witnesses." *In re Marshall*, 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998). "However, this Court may make its own findings of fact and conclusions of law." Id. Furthermore, a disciplinary violation must be proven by clear and convincing evidence. *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006).

## I. Factual Findings

In terms of the Panel's factual findings, Respondent contends the Panel erred in: (1) finding that his testimony was not credible; (2) placing emphasis on the fact that he settled the case for less than Client had authorized; (3) finding he violated GEICO's instructions to hold the settlement proceeds in escrow until the Release was signed by Client and her husband; (4) finding he did not have proper authorization from Client to settle her case; (5) finding he failed to present Client with any settlement or disbursement statement; (6) placing emphasis on the fact that he obtained medical releases from Client after the case was settled; and (7) making a statement that Respondent's failure to promptly return the settlement proceeds to GEICO after requested to do so by Attorney caused the Panel "grave concern."

The Panel prefaced its decision with a specific finding that Respondent's testimony was not credible. Because the inferences drawn from testimony in the record depended largely on the credibility of the witnesses, we believe this finding by the Panel is significant in terms of assessing Respondent's exceptions to the Panel's ultimate decision.

Deferring to the Panel on its credibility determination, we find there is evidence to support each of the factual findings challenged by Respondent. First, Client denied ever authorizing Respondent to settle her case for $6,000. Thus, the Panel's emphasis on the fact that Respondent settled Client's claim for less than $6,000 does not establish error on the part of the Panel as argued by Respondent. Instead, the Panel's finding was merely intended to support its determination as to Respondent's credibility.

Secondly, Respondent admitted that he endorsed the settlement check, deposited it into his trust account, and

transferred his legal fees to his operating account. Clearly, Respondent's actions were in direct violation of the instruc- tions by GEICO that Respondent retain the settlement pro- ceeds in his trust account until the parties signed and re- turned the Release. Even if, as Respondent contends, the settlement check was received prior to the GEICO instruction letter, this would not negate Respondent's misconduct. Once he received the letter, Respondent should have withdrawn his legal fees from the operating account and transferred them back to his trust account. Furthermore, Respondent was aware on August 22, 2005, that Client did not intend to sign the GEICO release. Thus, per GEICO's instruction, Respon- dent should have returned his legal fees to his trust account until the matter was resolved. As of the date of the Panel hearing on June 27, 2007, Respondent still retained the amount of his legal fees in his operating account.

Thirdly, again deferring to the Panel's credibility de- termination, there is evidence to support the Panel's finding that Respondent did not have proper authorization to settle Client's case. Respondent's reliance on his retainer agreement to support his decision to settle the case is misplaced. The terms of the retainer agreement only authorized Respondent to receive a settlement check and endorse a client's name if the client agreed to the proposed settlement. Here, Client adamantly denied authorizing Respondent to settle her case.

Fourthly, there is evidence to support the Panel's finding that Client had not signed any settlement or disbursement statement. Respondent admitted that Client never signed a release for the settlement check. Moreover, even at their last meeting on August 22, 2005, Client expressed dissatisfaction with the settlement, did not sign any documents, and ceased all further contact with Respondent.

Fifthly, there is evidence to support the Panel's finding that Respondent sought to obtain medical releases for Client's records after the case was settled. Respondent believes this finding was irrelevant to a determination of misconduct. We believe the Panel's finding was intended to establish that Respondent was not a credible witness. Respondent never adequately explained his decision to seek a medical release to obtain Client's medical records in August 2005 after he had

settled the case in July 2005. According to Respondent, he claimed he had in his possession all of Client's medical records at the time he entered into the settlement agreement. Respondent also testified that he informed Client on August 22, 2005, that the case had been settled and nothing could be done regarding any additional medical treatment for her injuries. Thus, the fact that he requested additional medical records after the settlement and this meeting created a discrepancy in Respondent's testimony and would again draw into question his credibility.

■ Finally, the Panel was justified in expressing concern over the fact that Respondent declined to promptly return the settlement proceeds to GEICO when requested by Attorney. Respondent admitted that Client never signed a settlement release. He also knew of the correspondence between Attorney and GEICO regarding a potential settlement of Client's claim. Therefore, Respondent was aware that Client's personal injury claim with GEICO had not been finalized. Despite this knowledge, Respondent delayed returning the funds to GEICO. Additionally, Respondent never relinquished the amount of his attorney fees even though he failed to procure a final settlement for Client. Respondent's failure to promptly return the entire amount of the settlement proceeds impeded Attorney's progress in pursuing Client's claim with GEICO.

## II. Exclusion of Testimony

■ Respondent contends the Panel erred in ruling that neither he nor his proposed witness (Witness B) could testify regarding problems Respondent encountered with Attorney prior to his representation of Client.

At the start of the hearing, Respondent's counsel indicated that he intended to call Witness B, a former client of Attorney's and a member of Respondent's office staff who was also his client. According to Respondent's counsel, Witness B was to testify regarding the "bad blood" that existed between Respondent and Attorney prior to the Client matter. Counsel also intended to elicit testimony from Witness B regarding a grievance she had filed against Attorney. Disciplinary counsel objected to the admission of this testimony on the ground it was irrelevant to a determination of Respondent's alleged

misconduct. After hearing arguments from counsel, the Panel ruled that Respondent's counsel could not present any testimony regarding a grievance against Attorney and needed to limit the testimony to only the interactions between Attorney and Respondent regarding the Client matter.

Unless provided otherwise in a specific rule, the South Carolina Rules of Evidence for non-jury civil matters and the South Carolina Rules of Civil Procedure apply to lawyer disciplinary proceedings. Rule 413, SCACR; Rule 9, RLDE. We hold the Panel properly limited the proposed testimony on the ground that it was not relevant. *See* Rule 401, SCRE (" 'Relevant' evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 402, SCRE ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina. Evidence which is not relevant is not admissible."). Because the Panel was only considering the formal charges against Respondent, the testimony presented was properly confined to Respondent's representation of Client. Furthermore, given that Attorney was called as a witness, Respondent's counsel was able to attack her credibility and establish any potential bias or prejudice she may have had against Respondent.

### III. Ninety–Day Suspension

Finally, Respondent challenges the Panel's recommendation of a ninety-day suspension. He contends the recommendation was not warranted because: (1) his endorsement of Client's husband's name on the GEICO settlement check was "either harmless error, or such an error as should not cause a suspension of his license;" and (2) the evidence did not support the Panel's findings that he committed several serious breaches of ethical conduct in violation of the Rules of Professional Conduct.

### A.

In its report, the Panel concluded that Respondent violated the following Rules of Professional Conduct, Rule 407,

SCACR: Rule 1.1, RPC ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); Rule 1.2, RPC ("Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to make or accept an offer of settlement of a matter."); Rule 1.4, RPC (providing that a lawyer shall keep the client informed and consult with the client regarding means by which client's objectives are to be accomplished); Rule 1.5, RPC (stating that "[u]pon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination"); Rule 1.15, RPC (providing that a lawyer shall: safeguard client's property; deposit unearned legal fees into client trust account; and render full accounting regarding client's property); Rule 8.4(d), RPC (stating it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation"); and Rule 8.4(e), RPC (stating it is professional misconduct for a lawyer "engage in conduct that is prejudicial to the administration of justice").

 We hold there was clear and convincing evidence that Respondent violated each of the above-listed Rules of Professional Conduct. Deferring to the credibility determination of the Panel, Client testified she never authorized Respondent to settle her case. Yet, Respondent settled Client's claim without her consent and despite the knowledge that she was still receiving medical treatment for her injuries. We find this conduct was in violation of Rule 1.1 (Competence); Rule 1.2 (Scope of Representation; Allocation of Authority between Client and Lawyer); and Rule 1.4 (Communication). Furthermore, Respondent engaged in fraudulent conduct in violation of Rule 8.4(d) when he signed Client's husband's name to the settlement check without his consent and without an agreement to represent him. In terms of Respondent's handling of

the settlement proceeds, Respondent's decision to negotiate the settlement check in violation of GEICO's instructions and to disburse his legal fees to his operating account constitutes a violation of Rule 1.5 (procedure lawyer should follow after conclusion of contingent fee matter) and Rule 1.15 (safekeeping client's property). Finally, Respondent's failure to promptly return the entire amount of the settlement proceeds to GEICO prevented Attorney from expeditiously pursuing Client's personal injury claim; therefore, we find this conduct was in violation of Rule 8.4(e) (conduct which is prejudicial to the administration of justice). Although not listed by the Panel, we also find this conduct violated Rule 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law. The lawyer may retain a reasonable nonrefundable retainer.").

### B.

With respect to the Panel's recommendation of a ninety-day suspension, there is precedent to establish that this sanction is within the range this Court has imposed in the past where attorneys have engaged in similar misconduct. However, due to Respondent's egregious conduct and the fact that he has been sanctioned by this Court in the past,[3] we find the Panel's recommendation is inadequate and a harsher sanction is warranted. Therefore, we hereby sanction Respondent to a six-month definite suspension and order him to pay the costs of the proceedings. *See, e.g., In re Nwangaza,* 362 S.C. 208, 608 S.E.2d 132 (2005) (finding public reprimand was warranted, upon submission of agreement, where attorney negotiated personal injury settlement check without client's consent/endorsement; deposited proceeds into trust account; issued a

---

3. *See In re White,* 328 S.C. 88, 492 S.E.2d 82 (1997) (holding public reprimand was warranted for attorney's improperly retaining client file, ex parte communication with the court, and commingling personal funds with client trust funds).

check for client's medical provider and withdrew her contingency fees; and failed to maintain the appropriate balance in her trust account until the dispute over the fees in a domestic matter was resolved); *In re Williams,* 336 S.C. 578, 521 S.E.2d 497 (1999) (accepting parties' agreement and holding that public reprimand was warranted where attorney: failed to properly safeguard his client's property by neglecting to promptly notify his client of settlement and fraudulently endorsing settlement check; failed to use proper accounting methods; failed to keep his client reasonably informed about status of case; failed to comply with demand for payment; made false statements to the Commission on Lawyer Conduct and other party in suit; and created a false Disbursement Sheet); *In re Belding,* 356 S.C. 319, 589 S.E.2d 197 (2003) (finding one-year suspension was appropriate sanction where attorney: settled case without first obtaining client's consent; drafted false documents which included names of real lawyers and a judge; failed to inform client regarding status of case; and failed to take steps to protect his client's interest after he attempted to be relieved as counsel following a "charade to conceal his mistakes"); *In re Lewis,* 344 S.C. 1, 542 S.E.2d 713 (2001) (holding attorney's engaging in improper banking practices, misappropriating client funds, signing clients' names to settlement documents and checks without clients' knowledge or consent, making false statement to disciplinary counsel, and violating financial record keeping warranted disbarment); *In re Ring,* 320 S.C. 249, 464 S.E.2d 328 (1995) (concluding sanction of disbarment warranted where: attorney settled case without client's authorization; forged client's signature; failed to keep client informed or respond to client's inquiries; misappropriated client funds; terminated representation without taking steps to protect client's interests; issued a bad check; and failed to cooperate in investigation); *In re Smith,* 310 S.C. 449, 427 S.E.2d 634 (1992) (holding disbarment was appropriate sanction where attorney: entered into settlement without client's consent and negotiated settlement check by forging client's signature; improperly handled client funds; failed to deliver property to client; failed to notify client of receiving funds in which client had an interest; made false statements to third party and Board; failed to cooperate with

348

investigation; failed to competently and diligently represent clients; and improperly disclosed client confidence).

## CONCLUSION

In view of the gravity of Respondent's misconduct, we hereby suspend Respondent from the practice of law for six months. Additionally, we order Respondent to pay costs associated with this proceeding within ninety days of the filing of this opinion. Within fifteen days of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.